IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| THE PARKER VENTURE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Act. No.: 3:21-cv-41-ECM |
| | ) | (wo) |
| CHANCEY DESIGN PARTNERSHIP, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTON

This cause is before the Court on a Motion to Dismiss (doc. 7), filed by Defendant Stanley D. Lindsey & Associates, Ltd ("SDL").

The Plaintiff, Parker Venture, LLC ("Parker Venture"), filed a complaint against SDL and Chancy Design Partnership, Inc. in state court.  The case was removed to federal district court on the basis of diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  No motion to remand was filed.  It appearing that the members of the Plaintiff LLC and the Defendants are completely diverse, (doc. 1 at 3-4), and that more than $75,000 is in controversy, the Court finds that there is subject matter jurisdiction in this case.

The complaint brings claims against Defendant Chancey Design Partnership, Inc., which were answered on January, 29, 2021.  (Doc. 12).  The complaint also asserts a negligence claim against SDL (count IV), which SDL has moved to dismiss.

For the reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III.    FACTS

The allegations of the complaint relevant to the sole claim asserted against SDL are as follows:

CA Student Living Auburn, LLC, entered into an Architectural Services Agreement with Chancey for the construction of an apartment building on the campus of Auburn University on February 24, 2015.  (Doc. 1-1 at 22).

Chancey subsequently entered into a written contract with SDL pursuant to which SDL agreed to provide structural engineering services for the design of the apartment building.  (*Id.* ¶13).  The complaint alleges that the agreement between SDL and Chancey incorporated by reference the Architectural Services Agreement, and that SDL agreed to assume toward Chancey all obligations and responsibilities that Chancey assumed under the Architectural Services Agreement.  (*Id.* ¶14).

Although the date is not alleged in the complaint, SDL's structural drawings are attached to SDL's reply brief and show that they were drafted in March of 2015.[1]

On April 3, 2015, CA Student Living Auburn Property Owners, LLC took assignment of the Architectural Services Agreement from CA Student Living Auburn, LLC.  (*Id.* ¶11).

On June 29, 2015, CA Student Living Auburn Property Owner, LLC entered into a Construction Agreement with Rabren General Contractors ("Rabren") for the construction of the building.  (*Id.* ¶17).

---

[1] A motion to dismiss is usually decided based on the complaint itself, but an exception may apply when a plaintiff refers to a document in its complaint and the defendant attaches the document to its motion to dismiss.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  SDL's brief gives the date of April 20, 2015 as the date that the drawings were finalized, without citation to a particular page. The Court finds the date of March 10, 2015, on the document pages.  (Doc. 8-1).  In any event, both the March and April dates are before the assignment date of August 28, 2015.

On August 28, 2015, CA Student Living Auburn Property Owner, LLC assigned the Architectural Services Agreement and the Construction Agreement to the Plaintiff, Parker Venture. (*Id.* ¶¶12, 17).

Construction of the building began on December 9, 2015, and was scheduled to be substantially completed on July 14, 2017.  On December 21, 2016, Rabren notified the architects that the upper-story walls of the building being constructed were experiencing story drift, resulting in out-of-plumb wall conditions.  (*Id.* ¶21).  The complaint alleges that to stabilize the building, SDL proposed converting the walls located between the dwelling units to lateral sheer wall elements.  (*Id.* ¶27). The construction company began implementing SDL's modification in February of 2017.  (*Id.* ¶28).  Parker Venture retained Pierce Engineers, Inc. and Thornton Tomasetti to assess the building.  Thornton Tomesetti issued a report which concluded that the structural design of the building was deficient. (*Id.* ¶34).  The parties entered into an agreement to toll for two years all statute of limitations and other time limitations related to claims arising under the Architectural Services Agreement and the agreement between Chancey and SDL relating to the structural failure.  (*Id.* ¶46).

## IV.   DISCUSSION

To establish negligence under Alabama law, a plaintiff must prove: (1) a duty to a foreseeable plaintiff, (2) a breach of that duty, (3) proximate causation, and (4) damage or injury.  *Brushwitz v. Ezell*, 757 So. 2d 423, 432 (Ala. 2000)(citing *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994)).

SDL has moved to dismiss the negligence claim brought against it on the ground that SDL owed no duty to Parker Venture.  SDL contends that because it is undisputed that Parker Venture did not own the construction project at the time SDL provided services, there is no duty.  Parker Venture's position is that SDL owed a duty to it because SDL acted affirmatively and because Parker Venture relied on SDL's work, which was identified in the Architectural Services Agreement.  Parker Venture argues that it was foreseeable that an owner of the building would rely on the design professional's work.

"The existence of a legal duty is a question of law for the court; 'where there is no duty, there can be no negligence.'"  *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) (citations omitted).  The general rule in Alabama law is that when "the charge of negligence is based upon breach of duty arising out a contractual relationship, no cause of action arises in favor of one not in privity to the contract."  *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc*., 244 So. 3d 896, 917 (Ala. 2017)(citations omitted).  An exception to that general rule applies, however, "when the defendant negligently performed its contract with knowledge that others were relying on its proper performance."  *Id.* Therefore, under Alabama law, "architects and similar design professionals may be liable in tort to persons with whom they are not in privity, when it is foreseeable that such persons would detrimentally rely on the professional's representations or performance."  *Cincinnati Ins. Companies v. Barber Insulation, Inc*., 946 So. 2d 441, 447–48 (Ala. 2006).

In this context, Alabama courts analyze six factors to determine whether to impose a duty:  (1) the extent to which the transaction was intended to affect the other person, (2) the foreseeability of harm to him, (3) the degree of certainty that he suffered injury, (4) the

closeness of the connection between the defendant's conduct and the injury, (5) the moral blame, and (6) the policy of preventing future harm. *Berkel & Co. Contractors, Inc. v. Providence Hosp.*, 454 So. 2d 496, 502 (Ala. 1984).[2]

The *Berkel* factors have been applied in a federal diversity case to find a duty where a contractor knew that the third party was relying on its proper performance. *See e.g.*, *Tull Bros. v. Peerless Prod., Inc.*, 953 F. Supp. 2d 1245, 1256 (S.D. Ala. 2013). In this case, however, SDL performed its allegedly deficient design services before Parker Venture was assigned an interest in the property, implicating several *Berkel* factors.

The Alabama Supreme Court has applied the *Berkel* test in a case which this Court is persuaded guides its analysis in this case. *See RaCON, Inc. v. Tuscaloosa Cty.*, 953 So. 2d 321, 335–36 (Ala. 2006); *see also Riley v. Kennedy,* 128 S. Ct. 1970, 1985 (2008)("A State's highest court is unquestionably the ultimate expositor of state law. ... [T]he prerogative of the Alabama Supreme Court to say what Alabama law is merits respect in federal forums.")(internal quotations and citations omitted).

In *RaCON*, the court examined whether a project design contractor, TTL, owed a duty to a builder, RaCON. 953 So. 2d at 335. The defendant County had hired an engineer for a road building project, and the engineer hired TTL, Inc. to consult on soil conditions on the roadway. *Id.* at 323. RaCON had the winning construction bid on the project. RaCON ultimately brought a negligence claim against TTL on the theory that TTL

---

[2] Although Parker Venture argues that SDL had a duty to it under two different theories--SDL's affirmative actions and Parker Venture's reasonable reliance—Parker Venture cites to *Berkel* in support of both theories. (Doc. 23 at 14). Therefore, the Court finds both theories to be addressed by the application of the *Berkel* factors.

provided negligent plans, tests, and designs. *Id.* at 328. The court began its analysis of the negligence claim by first considering the extent to which the entire transaction, including the bid process and the contract documents, was intended to affect the builder. *Id.* at 335. The court explained that when the project was designed, the project had not been released for bid and the defendant "had no reason to anticipate that RaCON would perform the contract." *Id.* The court reasoned that "none of the applicable *Berkel* factors indicate that, in the bidding phase of the project, TTL owed a duty to RaCON," because the providing of opinions for project design was "wholly neutral to all bidders," including RaCON. *Id.* at 335. The court further explained that "harm to RaCON was not foreseeable; certainty of injury to RaCON did not exist; and there was no connection between TTL's conduct and any damage to RaCON arising from TTL's recommendations to BKI on behalf of the County." *Id.*

In addition to *RaCON*, which directly applies the *Berkel* factors, SDL points to decisions of the Alabama Supreme Court in which it has examined the question of foreseeability when a construction project is purchased by a buyer after the initial contract was formed. For example, in *Howe v. Bishop*, 446 So. 2d 11, 13 (Ala. 1984), the court explained that that it was not reasonably foreseeable to the defendants that anyone other than the party that contracted to build the apartments at issue would own them, and, therefore, not foreseeable that the subsequently purchasing plaintiffs would be injured.

Similarly, in *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 10 (Ala. 2002), the court explained that as subsequent purchasers of a house, the plaintiffs had no relationship with, and no other contact with, the builder of the house or any of the contractor defendants who

installed an exterior insulation and finishing system (EIFS).  The court held that because the plaintiffs "were not the intended purchasers of the house when the EIFS was applied during the construction of the house, and because the Dryvit defendants could not have anticipated when or if the [plaintiffs] would purchase the house, the Dryvit defendants owed the [plaintiffs] no duty . . . ." *Id.*  "[T]he conclusion in *Keck* was based primarily on the fact that the defendants in that case were not participating in the construction of a house *intended to be occupied by the particular plaintiffs* and could not have anticipated that those plaintiffs would purchase the house." *Barrett v. Roman*, 181 So. 3d 364, 373 (Ala. Civ. App. 2015)(emphasis in original).

This Court is persuaded that these precedents inform the application of the *Berkel* factors in this case, because Alabama courts have long recognized that duty in a negligence action is "a duty to a foreseeable plaintiff*." See, e.g., Martin*, 643 So.2d at 567.[3]   Applying these precedents, therefore, this Court concludes that to find a plausible allegation of negligence under Alabama law in this case, there must be facts alleged to support that SDL had reason to anticipate that Parker Venture would purchase the project and that it was foreseeable that Parker Venture would rely on SDL's performance.

The allegations of the complaint are that SDL's design services were provided before Parker Venture took an assignment of any interest in the property.  There are no

---

[3]  Although *Keck* did not expressly apply the *Berkel* factors, it did apply *Ex parte Grand Manor*, *Inc*., 778 So. 2d 173, 178 (Ala. 2000), in its discussion of the negligence claims. 830 So. 2d at 10.  *Ex parte Grand Manor,* in turn*,* cited to *Berkel* as well as the proposition that "[w]here one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party—not a party to the contract—may occur upon a breach of that duty, the promisor owes that duty to all those within the foreseeable area of risk."  778 So. 2d at 178 (quotation omitted).

facts alleged which would tend to show that at the time SDL performed its allegedly deficient design work, SDL had reason to anticipate that Parker Venture would purchase the project from CA Student Living Auburn Property Owner, LLC.[4]   Further, because Parker Venture was not the owner of the project at the time the design services were provided, it was not foreseeable to SDL at the time it provided its services that Parker Venture would rely on SDL's design work.   Therefore, although this case is pending on a motion to dismiss, because the question before the Court is one of law, accepting the alleged facts and applying all of the relevant *Berkel* factors,[5] the Court concludes that SDL owed no duty to Parker Venture, and that SDL is due to be dismissed as a Defendant in this case.

## V.   CONCLUSION

For the reasons discussed it is hereby ORDERED that the Motion to Dismiss (doc. 7) is GRANTED and Stanley D. Lindsey & Associates, Ltd. is DISMISSED as a defendant in this case.

Done this 10th day of March, 2021.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Parker Venture relies on a theory that the duty was owed to the building's owner, whomever that was (Doc. 239-10), and has not sought leave to amend.

[5] The Alabama Supreme Court has held that in a case, such as this one, where the alleged negligence arises from a business relationship and there is a lack of personal injury, the factor of moral blame is not relevant. *See Aliant Bank*, 244 So. 3d at 918.