IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE PARKER VENTURE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Act. No.: 3:21-cv-41-ECM |
| ) | |
| CHANCEY DESIGN PARTNERSHIP, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTON**

This cause is before the Court on a Motion to Dismiss (doc. 42), filed by Defendant Stanley D. Lindsey & Associates, Ltd ("SDL").

The Plaintiff, Parker Venture, LLC ("Parker Venture"), filed a complaint against SDL and Chancey Design Partnership, Inc. ("Chancey") in state court. The case was removed to federal district court on the basis of diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). No motion to remand was filed. Because it appears that the members of the Plaintiff LLC and the Defendants are completely diverse and that more than $75,000 is in controversy, the Court concludes that there is subject matter jurisdiction in this case.

This Court previously granted a motion to dismiss and dismissed SDL, finding there was no plausible claim of negligence alleged against SDL because Parker Venture had not sufficiently alleged a duty on the part of SDL. (Doc. 27 at 9).

1

On June 11, 2021, the Court denied a motion for reconsideration and granted an alternative motion for leave to amend the complaint and gave Parker Venture a date by which to file a new complaint, complete unto itself. (Doc. 38). Parker Venture timely filed an amended complaint. (Doc 40). The amended complaint was answered by Chancey. (Doc. 41). SDL has moved to dismiss the only claim brought against it in the amended complaint.

For the reasons to be discussed, the Motion to Dismiss is due to be DENIED.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III.   FACTS

The allegations of the amended complaint are as follows:

Chancey entered into a Consultant Agreement with SDL to provide structural engineering services for the design of an apartment building on the campus of Auburn University. (Doc. 40 para. 13). SDL attached to its motion a copy of this document which indicates it was entered into on February 18, 2015. (Doc. 43-1).[1] The structural engineering services were overseen by Thomas S. Tarpy, Jr. ("Tarpy"), the president of SDL and a licensed professional engineer. (Doc. 40 para. 22).

Chancey then entered into an Architectural Services Agreement with CA Student Living Auburn, LLC for the construction of the apartment building on February 24, 2015. (*Id.* para. 10).

The amended complaint alleges that the Consultant Agreement entered into by Chancey and SDL incorporated a section of the Architectural Services Agreement regarding the owner's right to assign the architectural services agreement to an affiliate or successor developer. (*Id.* para 15). Based on that, the amended complaint alleges, it was

---

[1] A motion to dismiss is usually decided based on the complaint itself, but an exception may apply when a plaintiff refers to a document in its complaint and the defendant attaches the document to its motion to dismiss. *See Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d 1276, 1284 (11th Cir. 2007) (stating that because the document was attached to the motion to dismiss, there was notice that the district court might consider the document and because it is referred to in the complaint, it is central to claim, its consideration comports with the requirements of notice pleading, and neither party challenges its authenticity).

reasonably foreseeable to SDL that an affiliate or successor developer would rely on SDL's proper performance of its structural engineering services. (*Id.* paras. 16–18).

On April 3, 2015, CA Student Living Auburn, LLC assigned the Architectural Services Agreement to CA Student Living Auburn Property Owners, LLC. (*Id.* para. 11).

On June 29, 2015, CA Student Living Auburn Property Owner, LLC entered into a Construction Agreement with Rabren General Contractors ("Rabren") for the construction of the building. (*Id.* para. 24).

SDL provides a document to show that Parker Venture was formed as a business on August 4, 2015. (Doc. 43-2).

On August 28, 2015, CA Student Living Auburn Property Owner, LLC assigned the Architectural Services Agreement and the Construction Agreement to Parker Venture. (Doc. 40 paras. 12&24).

On September 22, 2015, SDL issued its final structural drawings for the apartment building. Tarpy stamped them with his professional engineer stamp on that day. (*Id.* para. 25).

The amended complaint states that "[o]n information and belief, SDL knew or should have known prior to September 22, 2015 that Plaintiff had taken an assignment of the Architectural Services Agreement." (*Id.* para. 19). The amended complaint further alleges that Parker Venture relied on SDL's proper performance of its structural engineering services. (*Id.* at 20).

SDL provides a document to show that Parker Venture purchased the real property on which the apartment building was built on September 28, 2015. (Doc. 43-3).

Construction of the building began on December 9, 2015, and was scheduled to be substantially completed on July 14, 2017. (Doc. para. 28).

On March 30, 2016, SDL issued structural drawings for the building marked "General Revision." (*Id.* para. 25). This revision impacted the wood frame structural system that ultimately failed. (*Id.*).

On November 2, 2016, SDL's representative visited the construction site. At that time, 75% of the wood walls and floor joists for the fifth level were constructed and two walls leading to the sixth level had been erected. (*Id.* para. 30).

On December 21, 2016, Rabren notified the architects that the upper-story walls were experiencing story drift, resulting in out-of-plumb wall conditions. (*Id.* para. 31).

On January 3, 2017, SDL went to the building for the first time since November 2, 2016. (*Id.*). At a January 24, 2017 meeting, SDL representatives stated that the story drift was the result of absence of any lateral force resisting structural system. (*Id.* para. 33).

On January 26, 2017, SDL issued its structural calculations for the building. (*Id.* para. 27). These calculations are alleged to have been erroneous and to have directly impacted the design of the wood frame structural system that ultimately failed. (*Id.*).

To stabilize the building, SDL proposed converting the demising walls located between the dwelling units to lateral sheer wall elements. Rabren began implementing SDL's modification in February of 2017. (*Id.* para. 38).

Parker Venture retained Pierce Engineers, Inc. to review the structural failure. To confirm that report, Parker Venture retained Thornton Tomasetti, Inc. to conduct a forensic

5

engineering analysis of the building. Thornton Tomesetti issued a report which concluded that the structural design of the building was deficient. (*Id.* para. 44).

On April 7, 2017, Tarpy stated that the building movement was caused by construction deficiencies. (*Id.* para. 51).

The parties entered into an agreement to toll for two years all statute of limitations and other time limitations.

### IV.   DISCUSSION

SDL argues that the negligence claim brought against it in the amended complaint is barred by the statute of limitations and that Parker Venture has failed to state a claim.

A.  Statute of Limitations

SDL's argument that Parker Venture's claim against it is barred by the statute of limitations is based on its characterization of this Court's Order allowing Parker Venture to file an amended complaint. SDL argues that because this Court allowed Parker Venture to file a new complaint, not to correct the deficient original complaint, the amended complaint does not relate back to the filing of the original complaint.[2] SDL relies on cases in which there was no relation back because the original complaint was dismissed. *See Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 975 (11th Cir. 2012).

The motion filed by Parker Venture in this case asked the Court to reconsider its dismissal of the claim against SDL or, alternatively, for leave to amend the complaint to

---

[2] SDL also states at various points in its briefing that the amended complaint which was filed by Parker Venture is not the amended complaint which was attached to its motion for leave to file an amended complaint. The Court's Order, however, did not limit Parker Venture's right to amend to the attachment. (Doc. 38).

6

add allegations to resolve issues identified by the Court in its dismissal Order. (Doc. 34 at 2). In granting the motion, this Court noted that Parker Venture sought to allege facts to address deficiencies in the original complaint. (Doc. 38 at 2). The Court directed a new complaint be filed, rather than merely an amendment which incorporated new facts into the original complaint by reference, consistent with the Local Rules of this Court. *See* M.D. Ala. LR 15.1.

An amended complaint will relate back if the amendment "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). In this case, the original complaint and the amended complaint allege negligence claims arising out of the same allegations of SDL's design services. The case was not closed with the granting of the original dismissal, and the Court granted leave to file a new complaint in the context of denying reconsideration of its earlier dismissal. The amended complaint, therefore, relates back. *See Homaday v. Smith & Nephew, Inc.*, 994 F. Supp. 2d 1264, 1267 (M.D. Fla. 2014)(amended complaint bringing claims arising out of the same conduct related back where the original complaint was dismissed but the case was not closed, and the plaintiff was given leave to amend). The motion to dismiss, therefore, is not due to be granted on the basis of the statute of limitations.

B. Failure to State a Claim

The motion to dismiss asserts that despite its efforts to correct its originally pleaded claim against SDL, Parker Venture still has failed to allege facts to plausibly state a negligence claim. Primarily, SDL argues that Parker Venture has not alleged facts to show that SDL owed it a duty.

7

Under Alabama law, there is a six-factor test for evaluating whether there is a duty in a construction context. *See Berkel & Co. Contractors v. Providence Hosp.*, 454 So. 2d 496 (Ala. 1984). These factors include the extent to which the transaction was intended to affect the other person, the foreseeability of harm to that person, the degree of certainty that the person suffered injury, the closeness of the connection between the defendant's conduct and the injury, the moral blame attached to such conduct, and the policy of preventing future harm. *Id.*

The Alabama Supreme Court has applied the *Berkel* test in a case in which a county had hired an engineer for a road building project, and the engineer hired TTL, Inc. to consult on soil conditions on the roadway. *RaCON, Inc. v. Tuscaloosa Cty.*, 953 So. 2d 321, 323 (Ala. 2006), *as modified on denial of reh'g* (Sept. 15, 2006). RaCON had the winning construction bid on the project and ultimately brought a negligence claim against TTL on the theory that TTL provided negligent plans, tests, and designs. *Id.* at 328. The court began its analysis of the negligence claim by first considering the extent to which the "entire transaction," including the bid process and the contract documents, was intended to affect the builder. *Id.* at 335. The court explained that when the project was designed, the project had not been released for bid and the defendant "had no reason to anticipate that RaCON would perform the contract." *Id.* The court reasoned that "none of the applicable *Berkel* factors indicate that, in the bidding phase of the project, TTL owed a duty to RaCON," because the providing of opinions for project design was "wholly neutral to all bidders," including RaCON. *Id.* at 335.

8

Parker Venture argues that it has alleged sufficient facts to establish a duty under Alabama law because it has alleged that SDL knew of Parker Venture's involvement in the project when SDL provided defective services.  Parker Venture points out that SDL has essentially conceded that the amended complaint alleges a duty to Parker Venture in at least some respect because the amended complaint alleges that Parker Venture purchased the project's real property on September 28, 2015, before SDL's revision to its structural drawings in March of 2016 and structural calculations in January of 2017. (Doc. 43 at 14). Specifically, the amended complaint alleges that on March 30, 2016, SDL issued structural drawings for the building marked "General Revision." (Doc. 40 para. 25).  This revision impacted the wood frame structural system that ultimately failed. (*Id.*).  The amended complaint also alleges that on January 26, 2017, well after Parker Venture became the owner of the real property, SDL issued its structural calculations for the building which are alleged to have been erroneous and to have directly impacted the design of the wood frame structural system that ultimately failed. (*Id.* para. 27).

Parker Venture also argues that a duty is pleaded through the allegations that at the time structural drawings were submitted by Tarpy of SDL in September of 2015, Parker Venture had already been assigned interests in the project; namely, the Architectural Services Agreement and the Construction Agreement. (*Id.* paras. 12, 24).  Parker Venture point out that it has alleged that "on information and belief, SDL knew or should have known" that Parker Venture had "taken assignment of the Architectural Services Agreement." (*Id.* para. 19).

SDL's position is that although Parker Venture contends that it should have been reasonably foreseeable that the project would be assigned, there is "no evidence" to indicate that SDL knew that Parker Venture specifically had acquired the project. (Doc. 43 at 13). SDL also argues that an allegation "on information and belief" is not sufficient to allege a plausible entitlement to relief.

In the context of a motion to dismiss, Parker Venture does not have to produce evidence. *Iqbal*, 556 U. S. at 678. Furthermore, the mere fact that Parker Venture used the language "on information and belief" within the amended complaint is not fatal to its claim in this case. "Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015)(collecting cases). The Fifth Circuit has concluded that "[t]he *Twombly* plausibility standard, which applies to all civil actions . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant . . . ." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc*., 892 F.3d 719, 730 (5th Cir. 2018)(quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Courts within the Eleventh Circuit have reached that conclusion as well. *See, e.g., Real Estate Industry Solutions, LLC v. Concepts in Data Management U.S., Inc*., 2011 WL 13141506, at *5 (M.D. Fla. 2011). Here, SDL's knowledge of when Parker Venture acquired an interest in the project is information within SDL's particular knowledge.

To substantiate its allegations "on information and belief" that SDL knew of the assignment of the Architectural Services Agreement, Parker Venture has pleaded that it was reasonably foreseeable that the Architectural Services Agreement would be assigned because the agreements in this case contemplated assignment. (Doc. 40 para. 16). SDL argues in response that the Consultant Agreement between Chancey and SDL forbids the assignment of that agreement without consent, so it forbids assignment. The contract language pointed to, however, does not foreclose assignment of the Architectural Services Agreement between Chancey and CA Student Living Auburn, LLC, but only the Consultant Agreement itself.

Also in support of the allegation that SDL knew of Parker Venture's interest in the project, Parker Venture alleges that SDL had an ongoing role in the project, including site visits. (*Id.* paras. 30&32).

Considering the alleged facts of the entire transaction, as required by Alabama law, *see RaCON*, 953 So. 2d 335, including the assignments of contracts, purchase of the real property, and site visits by SDL, along with Parker Venture's allegations of SDL's knowledge, this Court concludes that there are sufficient facts to support that SDL knew Parker Venture had an interest in the project at the time it provided design services. Whereas in *RaCON*, the defendant "had no reason to anticipate that RaCON would perform the contract," *id*., here, Parker Venture became the owner of the real property before SDL rendered some of its design services, and even before the real property was purchased, SDL is alleged to have known that Parker Venture took an assignment of a project contract.

Therefore, this case is distinct from *RaCON* because SDL would "have reason to anticipate" that Parker Venture would receive its services. *Id.*

The above-discussed facts of SDL's knowledge also tend to show that harm to Parker Venture was foreseeable, as well as other applicable *Berkel* factors. Accordingly, the Court is persuaded that a plausible claim for negligence has been pleaded. Questions raised with respect to the negligence claim, including the precise point at which any duty to Parker Venture arose, ultimately will have to be evaluated after factual development in the case. *See Public Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 186 (Ala. 2010) (describing the *Berkel* factors as a fact-intensive inquiry).

## V.   CONCLUSION

For the reasons discussed, the Motion to Dismiss (doc. 42) is ORDERED DENIED.

DONE this 22nd day of November, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE